IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| TONYA S.,<br><br>    Claimant,<br><br>  v.<br><br>KILOLO KIJAKAZI, Acting<br>Commissioner of Social Security,<br><br>    Respondent. | No. 20 CV 2294<br><br>Magistrate Judge Jeffrey T. Gilbert |

**MEMORANDUM OPINION AND ORDER**

Claimant Tonya S.[1] ("Claimant") seeks review of the final decision of Respondent Kilolo Kijakazi,[2] Acting Commissioner of Social Security ("Commissioner"), denying Claimant's application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("Act"). Pursuant to 28 U.S.C. § 636(c) and Local Rule 73.1, the parties have consented to the jurisdiction of a United States Magistrate Judge for all proceedings, including entry of final judgment. [ECF No. 9]. This Court has jurisdiction pursuant to 42 U.S.C. §§ 405(g) and 1383(c), and the parties have filed cross-motions for summary judgment [ECF Nos. 19, 23] pursuant to Federal Rule of Civil Procedure 56. For the reasons discussed below, Claimant's

---

[1] Pursuant to Northern District of Illinois Local Rule 8.1 and Internal Operating Procedure 22, the Court will identify the non-government party by using his or her full first name and the first initial of the last name.

[2] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, the Court has substituted Acting Commissioner Kijakazi as the named defendant.

Motion for Summary Judgment [ECF No. 19] is granted in limited part, and the Commissioner's Motion for Summary Judgement [ECF No. 23] is denied. This matter is remanded to the Social Security Administration for further proceedings consistent with this Memorandum Opinion and Order.

## PROCEDURAL HISTORY

On February 8, 2016, Claimant filed a Title II application for DIB alleging disability beginning on June 14, 2015. (R. 360–61). Her claim was denied initially and upon reconsideration, after which she requested a hearing before an Administrative Law Judge ("ALJ"). (R. 256, 265, 268–73). On September 21, 2018, Claimant appeared and testified at a hearing before ALJ Edward P. Studzinski. (R. 181–215). ALJ Studzinski also heard testimony on that date from impartial vocational expert ("VE") Aimee Mowery. (R. 215–21). On March 7, 2019, ALJ Studzinski denied Claimant's claim for DIB. (R. 152–68).

In finding Claimant not disabled, the ALJ followed the five-step evaluation process required by Social Security regulations for individuals over the age of 18. See 20 C.F.R. §§ 404.1520(a), 416.920(a). At step one, the ALJ found that Claimant had not engaged in substantial gainful activity since June 14, 2015. (R. 154). At step two, the ALJ found Claimant had a severe impairment or combination of impairments as defined by 20 C.F.R. 404.1520(c). (R. 155). Specifically, Claimant has an organic mental disorder, affective disorder, and spinal disorder. (R. 155). The ALJ also acknowledged a non-severe impairment, obesity, as well as Claimant's complaints of a brain injury, cervical spine fracture, and numbness of the legs, but concluded these did not cause any work-related functional limitations. (R. 155).

At step three, the ALJ determined that Claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 155–57). In particular, the ALJ considered listings 1.04, 12.02, 12.04, and 12.06 and evaluated whether the "paragraph B" or "paragraph C" criteria had been satisfied for the mental listings. (R. 155–57). The ALJ determined listing 1.04 did not apply because there was no evidence of spinal compression, arachnoiditis, or stenosis as required, and in so concluding, he considered that the combined effects of Claimant's obesity, with her other impairments, might be greater than each of the impairments considered separately. (R. 155–56). In finding the "paragraph B" criteria had not been met, the ALJ noted Claimant had limitations in certain broad areas of functioning; namely, moderate limitations in understanding, remembering, or applying information, interacting with others, concentration, persistence, or pace, and in adapting or managing oneself. (R. 156). But, because Claimant's impairments did not cause at least two "marked" limitations or one "extreme limitation," the ALJ concluded that the paragraph B" criteria were not satisfied. (R. 156). As to the "paragraph C" criteria, the ALJ concluded the medical evidence of record did not show a deterioration of Claimant's functioning outside of the home, and so the criteria were not satisfied. (R. 156–57).

The ALJ then found Claimant had the residual functional capacity ("RFC") to:

"lift and/or carry up to 20 pounds occasionally and 10 pounds frequently, and has no limitations [on] the total amount of time she is able to sit, stand, or walk throughout an 8 hour workday. The claimant needs to alternate her position between sitting, standing, and walking for no more than five minutes out of every half hour. While doing so, she would not need to be off task. The claimant

3

can occasionally climb ramps and stairs, and she can occasionally stoop, kneel, balance, crouch and crawl, but she can never climb ladders, ropes or scaffolds. The claimant is limited to working in non-hazardous environments, i.e., no driving at work, operating moving machinery, working at unprotected heights or around exposed flames and unguarded large bodies of water, and she should avoid concentrated exposure to unguarded hazardous machinery. The claimant is further limited to simple, routine tasks, work involving no more than simple decision-making, no more than occasional and minor changes in the work setting, and work requiring the exercise of only simple judgment. She ought not perform work which requires multitasking. She could perform work requiring an average production pace, but is incapable of significantly above average or highly variable production pace work. She ought not perform work which requires significant self direction. She is further precluded from work involving direct public service, in person or over the phone, although the claimant can tolerate brief and superficial interaction with the public which is incidental to her primary job duties. She is unable to work in crowded, hectic environments. The claimant can tolerate brief and superficial interaction with supervisors and co-workers, but is not to engage in tandem tasks." (R. 157).

Based on this RFC, the ALJ found at step four that Claimant had past relevant work as a nurse's assistant and as a phlebotomist. (R. 167). The mental and physical demands of this work, however, exceeded Claimant's residual functional capacity and so the ALJ concluded that Claimant was unable to perform her past relevant work as actually or generally performed. (R. 167). At step five, the ALJ concluded that, considering Claimant's age, education, past work experience, and residual functional capacity, she is capable of performing other work within the national economy and that those jobs exist in significant numbers. (R. 167–68). Specifically, the VE identified in her testimony, on which the ALJ relied, jobs at the light and sedentary exertional levels, including office helper, mail clerk, document preparer, or ticket counter. (R. 167–68). The ALJ then found Claimant was not under a disability from June 14, 2015 through March 7, 2019, the date of his decision. (R. 167–68). The Appeals Council declined to review the matter on August 19, 2019, (R. 1–7), making

4

the ALJ's decision the final decision of the Commissioner and, therefore, reviewable by this Court. 42 U.S.C. § 405(g); *see, e.g., Smith v. Berryhill*, 139 S. Ct. 1765, 1775 (2019); *Haynes v. Barnhart*, 416 F.3d 621, 626 (7th Cir. 2005).

## STANDARD OF REVIEW

When a claimant files an application for disability benefits, he or she bears the burden under the Social Security Act of bringing forth evidence that proves his or her impairments are so severe that they prevent the performance of any substantial gainful activity. 42 U.S.C. § 423(d)(5)(A); *see Bowen v. Yuckert*, 482 U.S. 137, 147–48 (1987) (citing 42 U.S.C. § 423(d)(1)(A)). A five-step inquiry controls whether an individual is eligible for disability benefits under the Social Security Act, which the Seventh Circuit has summarized as follows:

> The ALJ must consider whether: (1) the claimant is presently employed; (2) the claimant has a severe impairment or combination of impairments; (3) the claimant's impairment meets or equals any impairment listed in the regulations as being so severe as to preclude substantial gainful activity; (4) the claimant's residual functional capacity leaves him unable to perform his past relevant work; and (5) the claimant is unable to perform any other work existing in significant numbers in the national economy."

*Butler v. Kijakazi,* 4 F.4th 498, 501 (7th Cir. 2021) (citing *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351–52 (7th Cir. 2005); 20 C.F.R. §§ 404.1520, 416.920). Claimant bears the burden of proof at steps one through four, but the burden shifts to the Commissioner at step five. *Wilder v. Kijakazi,* 22 F.4th 644 (7th Cir. 2022); *Gedatus v. Saul,* 994 F.3d 893, 898 (7th Cir. 2021).

A decision by an ALJ becomes the Commissioner's final decision if the Appeals Council denies a request for review. *Sims v. Apfel*, 530 U.S. 103, 106–07 (2000). The reviewing court may enter a judgment "affirming, modifying, or reversing the

5

decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). Judicial review is limited to determining whether the ALJ's decision is supported by substantial evidence in the record and whether the ALJ applied the correct legal standards in reaching his or her decision. *See Nelms v. Astrue*, 553 F.3d 1093, 1097 (7th Cir. 2009). Substantial evidence "means – and means only – such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal quotations omitted); *see also,* 42 U.S.C. § 405(g); *Fowlkes v. Kijakazi,* 2021 WL 5191346, at *2 (7th Cir. 2021). "[W]hatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high." *Biestek*, 139 S. Ct. at 1154. But even where there is adequate evidence in the record to support the decision, the findings will not be upheld if the ALJ does not build a "logical bridge" from the evidence to the conclusion. *Wilder,* 22 F.4th 644 (citing *Butler,* 4 F.4th at 501); *see also, Jarnutowski v. Kijakazi,* 2022 WL 4126293, at *4–5 (7th Cir. 2022). In other words, if the Commissioner's decision lacks evidentiary support or adequate discussion of the issues, it cannot stand. *See Villano v. Astrue,* 556 F.3d 558, 562 (7th Cir. 2009).

However, even where there is adequate evidence in the record to support the decision, the findings will not be upheld if the ALJ does not build a "logical bridge" from the evidence to the conclusion. *Wilder,* 22 F.4th 644 (citing *Butler,* 4 F.4th at 501). In other words, if the Commissioner's decision lacks evidentiary support or adequate discussion of the issues, it cannot stand. *See Villano v. Astrue,* 556 F.3d 558, 562 (7th Cir. 2009). Though this standard of review is deferential, a reviewing court

6

must "conduct a critical review of the evidence" before affirming the Commissioner's decision. *Eichstadt v. Astrue*, 534 F.3d 663, 665 (7th Cir. 2008) (internal quotations omitted). The reviewing court may not, however, "displace the ALJ's judgment by reconsidering facts or evidence, or by making independent credibility determinations." *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008); *see also, Gribben v. Kijakazi,* 2022 WL 59404, at *2 (7th Cir. 2022) ("We do not reweigh the evidence or resolve conflicts in it."). "[O]nly if the record compels a contrary result" will the court reverse the ALJ's decision. *Fowlkes*, 2021 WL 5191346, at *2 (quoting *Borovsky v. Holder*, 612 F.3d 917, 921 (7th Cir. 2010)).

## ANALYSIS

### I. Claimant's RFC

The RFC is the "assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." SSR 96-8p, 1996 WL 374184, at *1 (July 2, 1996); *Madrell v. Kijakazi,* 25 F.4th 514, 516 (7th Cir. 2022); *Jeske v. Saul,* 955 F.3d 583, 593 (7th Cir. 2020). "In making a proper RFC determination, the ALJ must consider all of the relevant evidence in the record, even limitations that are not severe, and may not dismiss a line of evidence contrary to the ruling." *Murphy v. Colvin,* 759 F.3d 811, 817 (7th Cir. 2014), as amended (Aug. 20, 2014) (quotation omitted); *see also Crump v. Saul*, 932 F.3d 567, 570 (7th Cir. 2019); *Varga v. Colvin,* 794 F.3d 809, 813 (7th Cir. 2015); SSR 96-8p; 20 C.F.R. § 416.945(a).

Here, Claimant argues that the RFC is flawed in two ways: the mental RFC does not account for Claimant's memory and concentration difficulties, and the physical RFC does not accommodate Claimant's lumbar radiculopathy with lower extremity neuropathy. Claimant also more broadly charges that the ALJ improperly inferred that Claimant could sustain full-time employment because Claimant held a part-time job as a nurse's assistant or a phlebotomist at various times during the relevant period, and that the ALJ wrongly equated Claimant's ability to drive with the ability to work full-time. The Court is persuaded that the ALJ placed outsized importance on Claimant's ability to sustain part-time employment and on certain of her activities of daily living, including that she is able to drive a car, in formulating the RFC. Remand is required for the ALJ to reconsider the totality of Claimant's limitations.

The ALJ repeatedly relied on Claimant's ability to do part-time work in rationalizing his RFC determination rather than properly grounding his assessment in record evidence and medical opinions from Claimant's treating physicians and the state agency consultants. For example, in justifying his conclusion that "Claimant's mental limitations were accommodated in the above RFC," the ALJ credited the fact that "[Claimant's] doctors indicate that she is not reliable due to memory and attention issues," but continued with a non-sequitur saying, "[C]laimant has not explained why, if she is reliable enough to work for 2 days a week, she would not be reliable to work full-time." (R. 163). The logical bridge is missing here. It is far from clear that someone who can work two days a week in one industry can work five full eight-hour days consistently in that or another job at a different skill level. To some

8

degree, the ALJ evaluated the types of activities Claimant was able do at her part-time job, like her ability to administer medications to patients at work and how that supported an ability to perform simple, routine tasks. But overall, the ALJ failed to "consider whether the work was done under special conditions or accommodations, including permission to 'take frequent rest periods' or 'work at a lower standard of productivity than other employees.'" *Warren v. Colvin*, 2015 WL 5081486, at *12 (N.D. Ill. 2015) (quoting 20 C.F.R. § 416.973(c)); *see also, Lanigan v. Berryhill,* 865 F.3d 558, 565–66 (7th Cir. 2017) ("We have cautioned ALJs not to draw conclusions about a claimant's ability to work full time based on part-time employment," especially when "the claimant's employer is accommodating him."). The ALJ did not conduct that kind of an analysis here.

The ALJ also impermissibly equated Claimant's ability to drive a car with an ability to work full time. (R.164). According to the ALJ:

> "Driving supports the ability to perform simple routine tasks. In order to drive, she must be able to understand how to operate a vehicle, remember how it functions and to use the automobile devices, and apply such information while driving. She also has to calculate distances and make judgment decisions quickly. Claimant is able to learn and follow multiple instructions to carry out a task as she is able to drive regularly which requires good ability to understand, remember and apply information as she has to be alert and focus on traffic while at the same time operating a vehicle, she needs to use judgment regarding distances and speed, and she must remember directions."

(R.164). There is no evidence in the record to support this pseudo-expert analysis other than possibly the ALJ's own lived experience or his common sense. But common sense does not necessarily support the notion that the ability to drive equals the ability to work full time. Common sense just as easily may teach that a person who

9

can drive a car may not have the necessary concentration, persistence, or pace to consistently attend and perform full-time work.

Activities of daily living can provide valuable insight into a claimant's functional abilities, but an ALJ must be careful not to go too far and "equate the ability to engage in some activities with an ability to work full-time, without a recognition that full-time work does not allow for the flexibility to work around periods of incapacitation." *Moore v. Colvin*, 743 F.3d 1118, 1126 (7th Cir. 2014) (citing *Roddy v. Astrue*, 705 F.3d 631, 639 (7th Cir. 2013); *Carradine v. Barnhart*, 360 F.3d 751, 755–56 (7th Cir. 2004); *Bjornson v. Astrue*, 671 F.3d 640, 647 (7th Cir. 2012)). Here, the ALJ took one step too far in his logical leap that Claimant can work full-time because she can drive a car, at least on the record now before the Court. *See, e.g., Schmidt v. Sullivan*, 914 F.2d 117, 118 (7th Cir. 1990) ("The fact that the plaintiff continues to play handball appears to have weighed heavily with the administrative law judge. It is indeed difficult for a lay person to understand how a person could suffer from disabling heart disease yet play handball for forty minutes every week. But judges, including administrative law judges of the Social Security Administration, must be careful not to succumb to the temptation to play doctor…Common sense can mislead; lay intuitions about medical phenomena are often wrong."). Other courts have found that an ALJ's reliance on what are essentially hunches is impermissible. *Blakes ex rel. Wolfe v. Barnhart*, 331 F.3d 565, 570 (7th Cir. 2003) ("The ALJ also concluded that [the claimant's] mental retardation may have been the result of poor environmental stimulation because of his mother's diagnosis of the same disability, and that his problems could thus be remedied by an

10

enriched school environment. Here again, the ALJ appears to have been reaching conclusions unsupported by evidence in the record. There is little evidence in the record regarding the origin of [the claimant's] low IQ scores and no evidence that an enriched school environment would remedy the situation. This assessment is the result of a hunch and an ALJ may not rely on a hunch."); *see also Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir. 1996) ("Without expressly relying on any medical evidence or authority, the ALJ determined that [the claimant's] efforts at engaging in a small machine repair/resale business were incompatible with a diagnosis of major depression and Dr. Shapiro's conclusions regarding [the claimant's] functional abilities. This is precisely the same scenario we confronted in *Wilder*, where the ALJ believed that the claimant's ability to do certain things (e.g. work as a security guard and carry a gun) was inconsistent with a diagnosis of depression. This is not a permissible ground upon which the ALJ may rely."); *Wilder v. Chater,* 64 F.3d 335, 338 (7th Cir. 1995) (a claimant is entitled to a decision based on the record rather than on a hunch).

 The Court is mindful of the deference that is owed to an ALJ's decision under the substantial evidence standard and that a reviewing court should not substitute its judgment for that of the ALJ's by reweighing the evidence. But the ALJ's analysis of Claimant's RFC needs to say "enough to enable review of whether the ALJ considered the totality of a claimant's limitations," *Lothridge v. Saul,* 984 F.3d 1227, 1233 (7th Cir. 2021), and the Court is unconvinced the ALJ did so here. On remand, the ALJ should be careful not to place outsized importance on Claimant's activities of daily living and part-time employment in evaluating Claimant's subjective

symptom testimony and ultimately, in determining Claimant's RFC. (R. 27, 635). For all these reasons, the Court finds that remand is necessary.

## II. The Medical Opinion Evidence

Claimant also argues that the ALJ erred by discounting the medical opinions of treating physicians Dr. Anjum Sayyad and Dr. Eva Pilcher, as well as the medical source statements provided by nurse Carla Rodriguez. The Court need not delve deeply into these arguments because the case is otherwise earmarked for remand. But the ALJ's analysis and discussion of the medical source statements submitted by Claimant was not as fulsome as would have been expected given the ALJ's conclusion that Claimant's medical treatment records did not support her treaters' assessments that Claimant was able to work only part-time.

All of Claimant's treaters noted at various times that Claimant was cleared for certain part-time, not full-time, employment, and then only with additional physical and mental limitations. (R. 164–66). The ALJ carte blanche "reject[ed] all opinions which limit the claimant to part-time work" because he said they were not supported by the medical and treatment records. (R. 166). That arguably could be a supportable finding but with more explanation than is presented in the ALJ's decision. Instead, it appears that the ALJ placed outsized importance on the fact that Claimant apparently asked her treaters to provide documentation to her employers limiting her to part-time work which, in his view, undercut the substance of her treaters' opinions and the credibility of Claimant's argument. (R. 163) ("these forms appear to have been completed at the request of the claimant because she thought she had been twice denied disability benefits because she was working part-time."). A claimant,

12

however, should not be unduly prejudiced by the fact that she asked her treaters to support her application for disability benefits if in their medical judgment they believed there was good reason to do so. Here, the ALJ summarily dismissed Claimant's treaters' opinions for the most part without sufficient explanation about why the treatment records were inconsistent with those medical judgments.

The Court recognizes that the question of whether a claimant can work full time ultimately is reserved for the Commissioner. *See* 20 C.F.R. § 404.1527(d)(1).[3] But certain comments by the ALJ make it impossible to determine on this record whether the ALJ concluded that Claimant was not disabled from performing full-time work because he did not like that she had asked her medical treaters to submit letters limiting her to part-time work, or because the ALJ believed the medical evidence of record did not support such a limitation. For example, the ALJ made it a point to note that Claimant "tolerate[s] her difficult son" who was diagnosed with schizophrenia but not medicated (R. 162) in the course of finding that she should be able to work a full-time schedule. It is not clear how these and other comments about Claimant's ability to drive and work part-time influenced the ALJ's ultimate decision. On remand, the ALJ is encouraged to spend more time analyzing Claimant's medical records and less time on his hypothesis that someone who can work part-time, drive

---

[3] *See also Collins v. Astrue,* 324 F. App'x 516, 520 (7th Cir. 2009) (in contrast to a medical opinion, a "treating physician's administrative opinion—such as the applicant's residual functional capacity (for sedentary work, for example) or whether the applicant is 'disabled'— is not entitled to any particular weight because those determinations are 'reserved to the Commissioner.'"); *Clifford v. Apfel,* 227 F.3d 863, 870 (7th Cir. 2000) ("A claimant, however, is not entitled to disability benefits simply because a physician finds that the claimant is 'disabled' or 'unable to work.'").

a car, and tolerate a difficult son with a disability must be able to work a full-time schedule.

To that end, the Court notes all of Claimant's treaters over a period of almost two and a half years after she was hit by a car and suffered brain and other injuries provided documentation that Claimant could only sustain part-time employment with her mental and physical limitations. Certain of Claimant's medical records lack specific functional assessments that would have aided the ALJ, and this Court, in evaluating the severity of Claimant's mental and physical limitations at various times. And the records also hint at the possibility that certain testing reflected atypical results when Claimant did not seem to exert full effort. (R. 165). The treater records, however, do contain some concrete findings as to Claimant's mental and physical limitations – findings to which the ALJ arguably gave short shrift because he felt Claimant was marshaling her treaters to support her disability application in a way that made her less credible. If the ALJ had limited his analysis to the substance of the medical and treatment records and whether they supported the treaters' opinions, his decision might have been more supportable. But, again, the overall tone of the ALJ's opinion is that Claimant's ability to work part time and to drive a car undercut her application for disability benefits more than did her medical and treatment records limited as they were. On remand, the ALJ, in the Court's view, should take more care in articulating why Claimant's medical records do not support her treaters' opinions if that remains the ALJ's view rather than on postulating about Claimant's abilities based on her ability to work part-time or drive a car.

### III. Medical Records Submitted Post-Hearing

Claimant also asks the Court to remand so the ALJ can consider late-submitted medical records from Dr. Pilcher. Although Claimant has not shown a reasonable probability that this evidence would change the outcome of the decision, *McKinzey v. Astrue*, 641 F.3d 884, 892 (7th Cir. 2011), this case is already destined for remand, and so the ALJ should consider any and all medical evidence submitted by Claimant in support of her asserted limitations at that time.

## CONCLUSION

Accordingly, for all these reasons, Claimant's Motion for Summary Judgment [ECF No. 19] is granted in limited part, and the Commissioner's Motion for Summary Judgement [ECF No. 23] is denied.

It is so ordered.

_____
Jeffrey T. Gilbert
United States Magistrate Judge

Dated: March 3, 2023